State of Connecticut v. 3M County, Case Number 25-11. Good morning, Mr. Clement. Good morning, Your Honors. If I may proceed. If it may please the Court, Paul Clement for the appellants. As the First Circuit decided in the context of the main case just last night, if the State had simply sued 3M for PFAS remediation in a single lawsuit, the appropriateness of a Federal forum would be obvious. A Federal court would then determine not only the availability of a Federal defense based on the production of the AFFF at the insistence of the Federal government, but the Federal court would go on and would determine whether or not PFAS from the Federal activity could be separated from PFAS from other activities and essentially allocate liability accordingly. But Connecticut, like Maine before it, believes that by filing two suits and disclaiming any AFFF liability in one of them, it can defeat Federal jurisdiction over the suit with the disclaimer. But that gambit would require two courts to answer the same basic questions about whether PFAS from Federal and private activities can be disentangled, and if so, what percentage to allocate to the Federal activities. And whether you think about that That's an efficiency argument, but the removal statute, I don't know that it's an efficiency argument. And what I hear when you say that is that, and maybe as that goes into the First Circuit decision, is that, well, it's very inefficient to have two separate proceedings where there will be overlapping evidence and so on. But the issue of what conduct is a violation of law, for example, as opposed to what harm results, those are two separate issues. Well, I mean, I suppose you can think of them as two separate issues. But just to be clear, I mean, you know, I think the issue goes beyond sort of efficiency here. And essentially, the critical thing and the whole reason we have Federal officer removal is because there's an entitlement to the defendant, like in 3M here, who's produced something at the behest of the Federal Government, to have a Federal forum to determine the scope of that defense. And ultimately here, there is a real live question about what's the scope of that Federal defense. And that's going to be true whether you have one suit or two suits. Now, to me, the reason two suits are so revealing is not because there's some inefficiency component standalone, but because the reason there are two suits is because my friends on the other side recognize that as to the AFFF PFAS, there's just no way to resist a Federal forum. And they haven't as to the sort of AFFF twin of the complaint that's before you in this litigation, they haven't resisted that going to Federal court. In trying to understand that circumstance, I was imagining the possibility of the PFAS and the AFFF being manufactured by two different entities. And in that circumstance, wouldn't a court indeed separate the two or the back finder would have to separate the two, which I'm understanding you'd suggest is not possible here. What am I missing? So what, I don't think you're missing anything, but I think in the context of an entity, and there are some entities that didn't produce any AFFF themselves. I mean, they don't have a Federal defense. They didn't act under the Federal Government at all. So they're in state court. So why isn't that the situation with the common manufacturer and to the extent it's being sued for the PFAS, it's got one forum and to the extent it's the AFFF, it's got another forum. Why not? Well, because here they're suing my client that's done both. And my client has a entitlement under Federal statute to raise the Federal defense in both suits. And in the context of somebody who's not produced under sort of Federal law, I'll grant you that it's just a sort of state causation issue. But in the context of somebody that has produced under Federal law, undeniably has a Federal defense. What if there were, and I don't know enough about 3M and the facilities, but what if there were three, two separate facilities, one pursuant to a military contract produced the PFAS and another pursuant to another contract produces the AFFF. And those two products as a result of separate conduct, separate facilities end up for whatever reason in Connecticut in the same facility. And then your argument I think is that, well, they're commingled and therefore that is a reason to bring up both actions together into Federal court. Is that, and I think that that's effectively your theory, but just to pick up on Chicharajee's question, these are two separate facilities that are producing something under frankly separate orders, one private, another military. So I take the point and I think what all I would tell you is I think it depends a little bit on the nature of the lawsuit. I mean if you had two separate facilities on separate parts of the state and the gravamen of the lawsuit was to say you didn't treat your employees well or something in one of the facilities or in both of the facilities and in one of the facilities you didn't treat them well because of specific Federal directions, well, then those suits, you might have one take place in Federal court and the other one would take place in state court. But when the nature of the injury is the contamination of the state natural resources, here you have claims that are specific to the same six rivers and shellfish in the Long Island Sound. So once you sort of look at all of the charged conduct here, which I think has to include the damages theory and the theory of what makes the conduct unlawful, and then you look even beyond that to the allegations in my friend's complaint, which specifically points out that PFAS by its nature migrates long distances. This is a suit. This isn't a one size fits all sort of argument. But in the nature of this suit where it's statewide natural resources recovery, I think in that kind of suit we would say, yeah, it doesn't matter if they're two separate facilities, we still have an entitlement to say that what you're trying to recover for, which is let's just pick the Connecticut River and the Farmington River, the contamination of those rivers, we have an ability to say, no, we have a defense to that based on our production pursuant to Federal contract. Our first argument would be if you can't disaggregate them at all, then we have a defense to everything. And then we would say, all right, if you have an expert who says you can allocate 25 percent to the Federal activity and 75 percent to the non-Federal activity, we bring in our expert and they say it's 75-25 the other way, those are all issues that should be resolved in Federal court, because those are ultimately issues about the scope of the Federal defense. And it just doesn't matter if you just try to disclaim it up front and you have the same basic question being adjudicated as to what's the scope of the disclaimer. And so, I mean, one way to think about our argument is we think that in practice this disclaimer is circular, that's what the First Circuit concluded in its main decision. So the First Circuit does have a more relaxed causation standard than I think we do. Would you agree with that? It depends which one of your precedents you want to focus on like a laser beam, with all due respect, I mean, I do think there's a difference. I think the law in the First Circuit is unambiguously that the 2011 amendments sort of lowered the bar to a significant degree. Now, in the agent opinion, you drop a footnote that says we recognize that the 2011 amendments did lower the bar. And then you have a subsequent case that says, well, the bar was always pretty low, so we're not so sure it's changed that much. At the end of the day, though, I mean, obviously, if you think this case turns on that, I suppose you can not decide this case until after the Supreme Court resolves the Chevron case. Chevron case, right. But I think that And why wouldn't it? I mean, so this argument is that the disclaimer, it would make it potentially easier to resolve if we waited for the Chevron case. The argument is that this disclaimer cuts off the causal nexus, right? But if we, as the standard that we've embraced, we can have a quibble about that. But if the Supreme Court in Chevron tells us that actually the First Circuit is right, and that it's a substantially lesser standard, and the related to language of the 2011 amendment really means something substantive, then, you know, then that may make a difference. So let me make the pitch as to why it doesn't make a difference. And but obviously, you know, it wouldn't be an abusive discretion to wait for the Chevron decision. But I do think you don't have to. And I think one way to think about this is my friend in the court below sort of told the court, like, look, this case really all turns on the disclaimer. And if you think about the parallel AFFF case, in that case, they haven't even resisted removal. And so this isn't a case where there's some dispute about sort of the connection between the AFFF contamination and what 3M did under Federal contract. And so, you know, and if you imagine something like the Chevron case where that's really what the dispute is. You know, you had somebody who's under a refinement contract, and they did some things that are allegedly tortious under their production facilities. And the question is, is that close enough? Like, that's a case where it all turns on is it a causal nexus or is it a related to or associated with test. But here, I mean, there's a one-to-one correspondence between the production of AFFF by my client and the Federal direction. And so I think this case turns entirely on the disclaimer, not on whether it's a low hurdle or a slightly even lower hurdle. So that would be my pitch for why you don't have to wait in deciding this case. Thank you very much. And you also reserve two minutes for rebuttal. So we'll hear from Mr. Kelly. Good morning. Good morning, Your Honor. Good morning, Your Honors. May it please the Court. My name is Christopher Kelly, Assistant Attorney General for the Plaintiff Appellee of the State of Connecticut. The State brought this action alleging State consumer protection and environmental pollution violations of certain corporate defendants in the course of their conduct designing, manufacturing, marketing, distributing, and selling PFAS-containing consumer goods. Consumer goods that are subject... May I ask you to raise the podium a little bit so that you're speaking more clearly into the mic? Thank you. Thank you. You can raise the podium, too. That may be it. The microphone, the microphone. Raise those microphones. I think the podium might be the maximum. Thank you. The kinds of consumer products that are subject to this lawsuit include a number of everyday things like dental floss, nonstick pans, carpeting, and rain gear. What the consumer products that are subject to this suit do not include are firefighting foam because the State expressly disclaimed any relief for AFFF firefighting foam from this complaint. And that disclaimer is decisive in this appeal for three reasons. First, the State has expressly and effectively carved out the only factual basis that 3M has claimed to invoke federal officer removal. Second? So may I ask you practically, is what I'm supposed to imagine a trial would be like in this case? Is that the jury would be told that to the extent any of the harms were caused by the AFFF, that shouldn't be factored in? Is that what you're anticipating? I think that the instruction, Your Honor, would be more like to the extent that you are not convinced that the harm came from the consumer PFOS, then the defendant is not liable. And the distinction that I'm making there, Your Honor— I'm not sure that's going to be satisfactory. I mean, there is a potential for some of this harm to have been caused by the AFFF. And for your disclaimer to actually have teeth, wouldn't you have to be prepared to have the jury told that if any of it was caused by AFFF, that couldn't be a basis for the State jury to award damages? No, Your Honor, I don't believe so. Because treating this like an environmental pollution case that our office brings, we've identified a contaminant. And we've clarified through the disclaimer that the contaminant isn't just PFOS. It's PFOS that is not from foam. But you see, I understand that 3M wants to be able to defend the suit you're bringing by saying, look, most of this harm was caused by AFFF, and we have the federal defense on that. And you're saying that you're disclaiming, but you don't want the jury to know that. I'm beginning to wonder whether your disclaimer is adequate here. What am I missing? I think I may have not been very clear, Your Honor, about what I meant there. My point was that the fact finder in this case will only hold 3M liable to the extent of any contamination. They are satisfied the evidence shows it's PFOS, which is not foam. We should be very clear in this case that 3M is not being held liable for any foam, both mil-spec foam that it claims the federal defense to. So when they want to put in evidence that says not PFOS, AFFF is the cause here. You're going to allow them to put that in so that they get the benefit of this disclaimer? Yes, Your Honor. 3M has the right to raise whichever alternative causation argument it wants to raise. All the evidence should be admitted into the case. That's not a problem. The point where the State and 3M are not on the same page about that argument is how are we characterizing 3M's argument that there's an alternative causation to the contamination. And don't we usually characterize a defendant's characterization very broadly? I mean, look, the history of the removal statute is in your sort of benefit of the person asserting or the defendant asserting removal. And you're asking us to, I think, to view it a little bit more narrowly than I think we ought to. Your Honor, I'm asking you to view the removal statute exactly as it has been historically. And the State has attempted to respect that interpretation of the statute by not bringing the claim that 3M has a plausible allegation of federal defense to and actually not bringing any claims to foam where the court might have to distinguish between whether that was foam that was produced under military specification or not because the State has disclaimed all A-triple-F firefighting foam, not just mil-spec. The disclaimer clarifies that the State is doing its best to bring claims that are just State claims, those under State consumer protection environmental pollution laws, and not those that infringe upon any federal protections. Excuse me, Your Honor? Why are you doing this? Why is this happening? Why are these very surgical disclaimers occurring? Your Honor, I think it's because PFAS is a very large issue. It affects many sites across many States. And there are many uses of PFAS. I gave several examples right at the beginning of my argument. And then there's one, which is federal. The only one that has been claimed. We have dental floss. We have nonstick pans. We have carpeting. We have all these things that have caused harm to our States, as we allege. And then there's one other product that was made for different clients for a different purpose and sent to different locations. And so, in our view, it's a different case. It raises different questions. And rather than hold up and address all these other State issues under traditional State powers to address the possibility of one federal question, we can address them as two separate cases. And so the disclaimer, Your Honor, But I understand from the appellant's perspective, from 3M's perspective, that when you try your State case, they are going to put in the evidence that's going to try to persuade the jury that the bulk of the harm, or some part of the harm, or all the harm, was caused by AFFF products, and that none of that can be considered, either because they have a defense or because you're going to agree to a charge that says no liability for AFFF harm. And it seems that that should be tried all at once in the federal court, no? I don't believe so, Your Honor. So you're not going to be able to avoid the question of AFFF causation? Correct, Your Honor. And are you not going to be willing for the jury to be told that they have a defense to that or a charge that you're not seeking recovery for any of that harm? Your Honor, the defense that will be operative there for 3M when it introduces that evidence that the contamination may actually be from firefighting foam is going to be the State's disclaimer. It accomplishes at the very least the exact same thing that 3M's federal defense of the government contractor defense would intend to do. 3M argues it has a right to remove this case to federal court to determine the scope and the validity of its government contractor defense. But the scope of its government contractor defense, as presented by 3M in its removal notice, only goes to claims that the State expressly says it has not brought and does not intend to bring. And so when that factual causation argument occurs, the defense that 3M has available to it has already been given to it by the State. And that's why the disclaimer works. It's not a case that on its face is a State case but in reality. So you heard my series of questions to your friend, Mr. Clement, about Chevron and about our standard, the causal analysis standard, and we can quibble about what exactly that means. But shouldn't we wait for Chevron to be decided? Because one of the things you just said was the disclaimer cuts off this avenue that's being pursued by 3M. But it cuts off the causal nexus avenue. I don't know what the Supreme Court is going to say at Chevron with respect to what the presumably lower standard is in light of the 2011 amendments. Your Honor, I certainly agree with my fellow counsel that if this Court wished to decide this case on the issue of either the causal nexus or if it becomes a lower related to standard, that this Court may do so. I see that my time is up. May I? Oh, no, go ahead. Go to the Second Circuit, Mr. Kelly. I just wanted to make sure. However, I don't think that it's necessary for this Court to do so because I don't think that this Court needs to rely on the causal nexus issue to rule for the State. And the reason for that being was the issue that I was just getting into with Judge Raji is that I don't think that there's federal jurisdictions case because 3M doesn't have a colorable federal defense because it's been rendered moot by the disclaimer. There are three elements under Isaacson to federal officer removal in this Court, right? And the first one is not in dispute, that 3M is a person that has plausibly alleged complying with government directive. And you have the causal nexus connection there. I believe that what that demonstrates is the necessity that the case and the issues before the Court actually stem from addressing the scope of federal authority that 3M was acting under. If the issue were simply that because 3M has worked for the federal government, it's entitled to have to remove cases to the federal court, we wouldn't need that second element. But the third, the government contractor defense, is actually, that's what brings Article III jurisdiction in here. It's a federal question. And Article III jurisdiction only exists if the Court actually need address that question. But under the most favorable interpretation of what 3M wishes to do with its government contractor defense, it can't gain anything from the Court that isn't already given to it by the State's disclaimer. And so while this Court certainly can, if it wishes to, wait for the Supreme Court's ruling in Plaquemines, I think that this Court can affirm the district court's remand order just on the basis of there not being a colorable federal defense and, therefore, there's no federal jurisdiction in this case. If there are no further questions, Your Honor, then I thank you for your time. Thank you very much. Thank you, Your Honor. Just a few points in rebuttal. First of all, I think all the parties agree, or really should agree, that you can't defeat federal jurisdiction with a purely circular disclaimer. So if the disclaimer here said, we hereby disclaim anything protected by a federal defense, like, everybody agrees that's a purely circular disclaimer and it doesn't work. But the disclaimer here is not materially different. It's just saying we disclaim everything that's AFFF, and that's what's protected by the federal defense. And my friend, in some respects, I think — I'm sorry. Why do you say that that's circular? That may be that there may be some other problems with it, but it's not circular. It's just surgical. No, it's — Why is it circular? Yes. The reason I use circular is because what you end up doing, if you walk into your — in your complaint, you say, I hereby disclaim anything protected by the federal defense. Well, you've just attempted to make the question a state law question of what's the scope of my disclaimer instead of what's the scope of my federal defense. But they're just mirror images of each other. So by the disclaimer, you've magically deprived the federal defendant of his or her forum, their entitlement to the federal forum, just by this circular disclaimer. That's all I mean by that. It creates a state law issue that is just a stalking horse mirror image for the federal defense. It doesn't really get rid of — it doesn't really eliminate the core issue. Exactly. And you're entitled, as the defendant in these circumstances, to a federal forum to decide that critical issue. And, you know, I think Judge Raju put her finger on something critical important, just the practicalities of this, is you try to imagine what the instruction to the jury looks like. It looks very artificial, and it ends up being an instruction about the disclaimer. And you can contrast that with a case where, well, there's only a federal defense to the failure to warn claim, and they just drop that claim. It's out of the case. There's no awkwardness with how you instruct the jury or any of these things. And maybe I'll finish with this point, is just as a practical matter, if you allow this divide-and-conquer strategy, one of these courts is going to decide the issue first. And one of the courts is going to say it's 75 or it's 25 or whatever it is. Now, one of two things will happen at that point. Either that's going to have res judicata effect because they're, quote, unquote, the same case. But if they're the same case, boy, that shows that it really belonged in federal court. The other thing that could happen is you could have — say, well, res judicata doesn't apply. They're not quite the same case. But then you have the possibility that in state court we're held liable for more of the contamination than we are in federal court, which, again, just illustrates that we're being deprived of our entitlement to a federal forum. So thank you, Your Honor. Thank you very much. We'll reserve the decision. Appreciate the argument.